EVERGREEN-WASHELLI MEMORIAL PARK COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1867–67. Filed October 28, 1968.

---

*Joseph D. Holmes, Jr.*, for the petitioner.
*Gary C. Randall*, for the respondent.

FAY, *Judge:* Respondent determined deficiencies in the Federal income tax of petitioner as follows:

| Year | Amount |
|---|---|
| 1963 | $7,438.54 |
| 1964 | 1,569.00 |

After certain concessions the only issue remaining for determination is whether the Commissioner properly capitalized certain expenditures incurred by petitioner in 1963 and 1964.

### FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Evergreen-Washelli Memorial Park Co. (hereinafter referred to as petitioner) is a Washington corporation engaged solely in the cemetery business with its principal offices at Seattle, Wash. Petitioner keeps its books and files its income tax returns on an accrual basis. For the calendar years 1963 and 1964 its income tax returns were filed with the district director of internal revenue, Tacoma, Wash.

Petitioner manages and operates three cemeteries known as Evergreen Memorial Park, Washelli Cemetery, and Abbey View Memorial Park. All three of these cemeteries are located in King County, State of Washington, and all three are "endowment care" cemeteries within the meaning of and regulated by chapter 68.40 of the Revised Code of Washington.

In 1920 a perpetual-care fund was established as a specific trust by the Evergreen Cemetery Co. of Seattle, the name by which petitioner was then known. The purpose of the perpetual-care fund was to provide for endowment care of Evergreen Memorial Park, which included the preservation, maintenance, and upkeep of the developed portions of Evergreen Memorial Park.

The Evergreen Cemetery Association is a Washington cemetery association organized on June 20, 1946, for the purpose of succeeding to the assets, liabilities, rights, and duties of the perpetual-care fund of the Evergreen Cemetery Co. of Seattle. The perpetual-care fund had been maintained by the Evergreen Cemetery Co. from 1920 to August 15, 1940, and by individual trustees from the latter date to December 31, 1946. By agreement dated December 31, 1946, the duties and liabilities of the former individual trustees of the perpetual-care fund of the Evergreen Cemetery Co. were assumed by the Evergreen Cemetery Association. Washelli Cemetery Association is a cemetery association similar to Evergreen Cemetery Association, organized for

the purpose of accepting and supervising the management of an endowment care fund for the preservation, maintenance, and upkeep of Washelli Cemetery.

Petitioner delivers to Evergreen Cemetery Association and Washelli Cemetery Association a specified percent of the sales proceeds of each burial lot, crypt, and niche which it sells in either Evergreen Memorial Park or Washelli Cemetery. The sales proceeds delivered by petitioner to the associations are not included in petitioner's gross income. Transfer of these proceeds is made pursuant to a written agreement entered into between petitioner and the purchaser of each burial lot, crypt, and niche. In order for the associations to carry out their required duty of providing for the upkeep of the cemeteries, they invest these proceeds, with the income therefrom going to petitioner. None of the principal of either of the endowment care funds may be used for the preservation, maintenance, or upkeep of the cemeteries but the principal must be maintained solely as an income-producing fund. Should the net income from the endowment care funds exceed necessary expenses in any particular year, the excess may be accumulated in a separate fund for the maintenance and care of cemetery property in any future period when current income might be insufficient to meet the current expenses of maintenance.

In both 1963 and 1964, as in all prior years, the entire net income of the endowment funds, exclusive of capital gains, was delivered to petitioner for the preservation, maintenance, and upkeep of the improved portions of Evergreen Memorial Park and Washelli Cemetery. In 1963 and 1964, Evergreen Cemetery Association paid petitioner $38,230.45 and $44,974, respectively, for endowment care of Evergreen Memorial Park. In 1963 and 1964, Washelli Cemetery Association paid petitioner $48,100.69 and $50,931, respectively, for endowment care of Washelli Cemetery. These amounts are carried on the books of petitioner in a separate and distinct account as they are received and are not commingled with petitioner's other receipts on those books.

In both 1963 and 1964, as in all prior years, petitioner used all of the funds received from both Evergreen Cemetery Association and Washelli Cemetery Association for the preservation, maintenance, and upkeep of Evergreen Memorial Park and Washelli Cemetery. In addition to the amounts received from Evergreen Cemetery Association and Washelli Cemetery Association, petitioner spent $32,073.46 in 1963 and $35,186.61 in 1964 of its own funds for the preservation, maintenance, and upkeep of Evergreen Memorial Park and Washelli Cemetery. All expenses of endowment care paid for with amounts received from the associations are based only on the actual cost of materials and labor to petitioner.

On its 1963 and 1964 income tax returns petitioner first computed the total amount of expenditures that it classified as being currently deductible expenses and then reduced this total by the amounts received from the associations for endowment care of the cemeteries.

In conformity with generally accepted accounting principles attributable to cemetery development, expenditures for the development and improvement of Evergreen Memorial Park and Washelli Cemetery have not been capitalized for recovery through depreciation on the the books or income tax returns·of petitioner. Initial cemetery development and improvement expenditures have been allocated to the cost basis of unsold cemetery lots and recovered as the individual cemetery lots are sold. This is accomplished by adding cemetery development and improvement expenditures to petitioner's "improved land" account. The total balance of the improved-land account at the end of each year is divided by the number of lots available for sale at the beginning of that year, plus those lots which become available for sale due to development during that year. The resulting cost per lot figure is used in computing the total cost of the lots actually sold during the year. Expenses incurred for the preservation, maintenance, and upkeep of the cemetery have been deducted as current operating expenses.

By the beginning of 1963 approximately 67.5 percent of the land included in Evergreen Memorial Park had been developed and sold, 7.5 percent had been developed but not sold, while 25 percent was dedicated for future development. At the beginning of 1964, 68 percent of the land in Evergreen Memorial Park had been developed and sold, 7 percent was developed but not sold, and 25 percent remained undeveloped. By the end of 1964, 68.4 percent of the land in Evergreen Memorial Park was developed and sold, 6.6 percent was developed but not sold, and 25 percent was still undeveloped. The undeveloped sections of the cemetery are in large part in the northern portion of the cemetery which is laid out in a north-south manner, roughly 4½ times as long as it is wide.

The improved portion of Evergreen Memorial Park contains a water pipe system installed and maintained to care for and preserve the improved portions of the cemetery and gravesites. This system, which contains water mains as well as lateral feeder lines for sprinkler and outlet purposes, was installed over the years as the Evergreen Memorial Park cemetery was developed. Much of the pipe was installed 25 to 30 years before 1963. During 1947 and 1948 a substantial amount of wooden water mains were installed because of difficulty in obtaining galvanized water pipe.

During 1963 and 1964 it was necessary to replace the wooden mains and a portion of the other pipes included in the system. At the time

replacement began there were approximately 14,300 feet of water mains. During 1963 and 1964, 6,110 feet of mains were replaced. Another 491 feet of mains were installed in the property for the first time during 1963. In addition, 3,100 feet of feeder lines were replaced in 1963 and 1964, and 633 feet were newly installed in 1964. The pipeline replaced had become increasingly expensive to maintain due to its condition. It was possible to patch some sections of the faulty pipe, but such patching did not produce satisfactory results. Furthermore, the cost of continually making such repairs would have been prohibitive. In 1964 petitioner also purchased, at a cost of $876.05, an additional 5,340 feet of 2-inch down to 1-inch pipe for future installation and 185 sprinkler heads at a cost of $769.60. During 1964, 30 feet of this pipe were used for repairs in various places in the cemetery. The balance was placed in inventory. The sprinkler heads were used for replacement purposes throughout the entire cemetery during the year following their purchase. No part of the original water pipe system or the replaced sections of pipe are in the unimproved portion of the cemetery.

In preparing its 1963 and 1964 income tax returns, petitioner deducted, added to the improved-land account, and inventoried the following amounts in connection with the work done on the water pipe system in Evergreen Memorial Park:

1. Deducted
   a. 1963—Materials (mains and feeder lines replaced) _____ $10, 829. 22
      Labor (attributable to the pipeline replaced) _____ 4, 588. 73

      Total replacement cost_____ 15, 417. 95

   b. 1964—Materials (feeder lines replaced)_____ 1, 057. 00
      Labor (attributable to the pipeline replaced) _____ 2, 624. 00

      3, 681. 00
   c. 1964—Materials (sprinkler heads used for replacement)_____ 769. 60
2. Additions to the improved land account
   a. 1963—Materials (newly installed mains)_____ 793. 57
      Labor (attributable to newly installed pipeline) _____ 722. 42
   b. 1964—Materials (newly installed feeders)_____ 522. 69
3. Inventoried
   1964—Materials (2-in. down to 1-in. pipe purchased for future installation)_____ 761. 09

In his statutory notice of deficiency the Commissioner determined that the amounts deducted by petitioner in 1963 and 1964 in connection with the water pipe replacement (items 1a and 1b above) were actually capital expenditures which should be recovered by straight-

line depreciation over the useful life of the pipeline installed, determined by the Commissioner to be 40 years. The Commissioner, however, did not make any adjustment to the amounts spent in 1963 by petitioner in connection with the newly installed pipeline (items 2a and 2b) which were added to its improved-land account. Furthermore, no adjustments were made for the deduction of $769.60 by petitioner for sprinkler heads in 1964 (item 1c) or to the $761.09 spent by petitioner for pipe in 1964 (item 3) which was added to its closing inventory.

OPINION

The issue is whether the Commissioner properly capitalized certain expenditures which were deducted by petitioner on its 1963 and 1964 income tax returns. These expenditures were incurred by petitioner in 1963 and 1964 in connection with the replacement of an existing pipeline in the improved portion of Evergreen Memorial Park.

Petitioner argues that it is entitled to deduct the expenditures under section 162 [1] as ordinary and necessary business expenses because this is the only way in which its revenues and expenses allocable to the improved portion of the Evergreen Memorial Park cemetery will be properly matched. In the alternative, petitioner contends that if the costs of replacing the pipeline are not currently deductible, they ought to be added to its improved-land account. [2]

Respondent's position is that the costs of replacing the pipeline are capital expenditures under section 263 which should be recovered through periodic depreciation deductions.

The Federal income tax treatment of initial expenditures for cemetery development and improvements is well established. Such expenditures are allocable to the cost basis of the various burial lots available for sale and are recovered when the lots are sold. *National Memorial Park* v. *Commissioner*, 145 F. 2d 1008 (C.A. 4, 1944), affirming a Memorandum Opinion of this Court, certiorari denied 324 U.S. 858 (1945); *Mount Vernon Gardens, Inc.* v. *Commissioner*, 298 F. 2d 712 (C.A. 6, 1962), affirming on this point 34 T.C. 598 (1960); *Sherwood Memorial Gardens* v. *Commissioner*, 350 F. 2d 225 (C.A. 7, 1965), affirming 42 T.C. 211 (1964).

We see no reason for having one rule for the initial costs of cemetery improvements and another for the costs of replacing these improve-

---

[1] All statutory references herein are to the Internal Revenue Code of 1954.

[2] Petitioner's original brief contained the additional alternative argument that a major portion of the deficiency determined was incorrect because petitioner had erroneously included in its gross income for 1963 and 1964 the amounts received from the endowment care associations. Petitioner, however, abandoned this theory in its reply brief indicating that the endowment care funds had not, in fact, been included in its gross income for those years.

ments. The respondent, however, contends that to allow petitioner to add all of its 1963 and 1964 pipeline replacement expenditures to its improved-land account would be contrary to our holding in *Sherwood Memorial Gardens, Inc.*, 42 T.C. 211 (1964), affd. 350 F. 2d 225 (C.A. 7, 1965), because petitioner would be allocating the expenditures to a specific portion of the cemetery whereas *Sherwood* requires the allocation to be over the entire cemetery as a whole.

We do not agree. A careful reading of the facts and opinion in *Sherwood* discloses that allocation over the entire cemetery as a whole means that the expenditures are to be allocated to the total number of burial plots available for sale in the cemetery. This is the exact result that will obtain if petitioner, in accordance with its accepted accounting method in this regard as set forth in the Findings of Fact herein, is permitted to add the costs of replacing the pipeline to its improved-land account.

Accordingly, we conclude that the Commissioner should not have capitalized petitioner's pipeline replacement expenditures under section 263 but rather should have added them to petitioner's improved-land account.

To reflect the concessions made by petitioner and our holding above,

*Decision will be entered under Rule 50.*